*958 OPINION OF THE COURT
Marie G. Santagata, J.
The defendant, Alan L. Finlayson, is charged by indictment with criminal possession of a weapon in the third degree. A second count of the indictment, charging criminal possession of stolen property in the second degree, was dismissed by previous order of this court dated November 15, 1979.
Defendant claiming to be aggrieved by an unlawful search and seizure moved for the suppression of the use of the gun found on his person as evidence. In addition, he moves for the suppression of a statement made by him. The motion was granted to the extent that a hearing was ordered and held. Decision was reserved on December 7, 1979. Thereafter, the court listened to minutes of the hearing which were not transcribed and the motion was deemed submitted for determination on January 9, 1980. On February 7, 1980, this court orally placed its order on the record. On its own motion, that order is hereby deemed vacated and the following shall constitute the opinion, decision and order of the court.
In this case, the People assert that the search of the defendant’s person was conducted as incident to a valid arrest. The People have the burden, in the first instance, of going forward to show the legality of the police conduct; that is, the police must initially show that the search was incident to a lawful arrest. Defendant, however, bears the ultimate burden of proving that the evidence should be suppressed.
At the hearing, three witnesses were called by the People: Sergeant Bruce Briel, Detective John Slobodzian and Officer Michael Vickerey. Their testimony was credible and was not marked by contradictions or inconsistencies.
Defendant offered and the court received in evidence the court record relating to Indictment No. 46475, Appellate Division order and letter of County Court Clerk.
FINDINGS OF FACT
On July 5, 1979, at approximately 11:30 a.m., Sergeant Briel of the Rockville Centre Police Department, while on radio motor patrol, was parked in a municipal parking field opposite some neighborhood stores in a residential area of Rockville Centre.
He saw two male blacks seated in a Cadillac parked in front of one of the stores. He kept the Cadillac under observation; during the course of an hour, he saw several individuals, *959 including a known drug addict walk to and away from the car. The officer became suspicious of the occupants because the area was known for drug and gambling traffic. He called for a radio check of the registration plate number of the Cadillac which revealed that the registered owner was William Warren and that there was an outstanding warrant of arrest for one Willy Warren.
The sergeant continued observing the Cadillac. He saw it pull away from the curb without signaling. It then traveled a few feet and made a U-turn across double yellow lines. He called for back-up assistance, and proceeded to stop the Cadillac, as two other police cars arrived, cutting it off.
Upon request, the driver gave the sergeant a registration in the name of William Warren and identification in the same name. He did not have an operator’s license. The sergeant then asked the defendant passenger for his name and date of birth. After receiving it, he returned to the police car to do a radio check of the name and date of birth given by the defendant. Within a few minutes, it revealed that there was an outstanding warrant for his arrest for a serious crime. After learning of the warrant, the sergeant returned to the Cadillac, asked the defendant to get out of the car and patted him down; as he did so, he found a handgun and three bullets in his pocket. The defendant was arrested. He was taken to the Rockville Centre Police Station where he was advised of his rights. He acknowledged that he understood by signing the police department form.
In response to questions asked by the police, he stated that he found the gun and carried it for his protection because he was small.
The warrant of arrest, which was the basis of the police action in this case, had been ordered by Honorable Paul Lawrence, County Court Judge on June 12, 1979, when a stay of execution of sentence expired and defendant failed to appear. The order to show cause signed by a Judge of the Appellate Division on June 29, 1979, stayed the execution of sentence and the forfeiture of bail pending a hearing in the County Court on July 6, 1979. That order made no reference to the bail or custody provisions of the defendant. On July 2, 1979, without further order of the court, the County Court Clerk sent a letter to the fugitive squad advising them that the warrant was stayed.
On July 6, 1979, the return day of the order to show cause, *960 the Bench warrant was vacated and bail was reinstated by a County Court Judge.
On July 5, 1979, the date of this incident, the warrant of arrest had not been removed from the computer and the sergeant was unaware of the circumstances relating to the warrant until this hearing.
CONCLUSIONS OF LAW
The court is faced with two issues not clearly resolved by this State:
(1) when does an officer have a right to ask a passenger in an automobile for his name and date of birth, and
(2) having received it, does he have the right to do a warrant check.
In reaching a conclusion, the court must first determine whether the police action was justified in its initial encounter with the vehicle in which the defendant was a passenger.
The police had a right to stop the vehicle in which the defendant was a passenger to issue traffic summonses to the driver for the failure to signal and the improper U-turn. (People v Ingle, 36 NY2d 413.)
At the time of the stop, the officer had additional information; he had observed the vehicle and its occupants for about an hour. He knew that it was an area known for drug and gambling traffic and seeing several individuals separately walk up to and away from the car, among them a known drug addict, he had done a radio check and knew that there was a possible warrant outstanding for the registered owner of the automobile. These factors justified the back-up assistance and the seizure of the vehicle by the police cars, enabling them to conduct a further investigation.
A stop for a traffic violation, or justified seizure of that vehicle does not give the police carte blanche to seize or search a passenger. However, once the vehicle is lawfully stopped, the same standards of scrutiny of police conduct should apply to the passenger as to a defendant encountered on the street. The officer on the street has a right to inquire if he can justify it by articulable facts. (People v De Bour, 40 NY2d 210.)
Concededly, the facts articulated by the officer in this case would not be sufficient to justify the stop of the vehicle without the traffic violations, however, once lawfully stopped *961 those facts are a sufficient basis for the inquiry of the passenger as to his name and date of birth.
It was a minimal additional intrusion to have the defendant wait in the car for the few minutes it took the police to do the radio check of his name and date of birth. The right of inquiry is meaningless without the right to verify. The dispositive test is whether under the totality of the circumstances, the conduct of the police was reasonable and the extent of the intrusion justified by articulable facts. The factors considered by this court are the brief delay of a few minutes; the limited control exercised over defendant, he remained seated in the car; the manner in which the control was exercised, no guns were drawn; and the justification for the initial stop of the automobile.
The police took no further action against the defendant until the radio check revealed an outstanding warrant for his arrest arising from a serious crime. The outstanding warrant gave the officer probable cause to arrest the defendant. The search conducted to his person was incidental to that lawful arrest, and the gun found during the course of the search should not be suppressed.
Nor is this legal arrest rendered illegal because of the circumstances surrounding the warrant.
The stay of execution of sentence expired on May 25, 1979. On June 6, 1979, bail was revoked and a Bench warrant ordered. It was signed on June 12, 1979. On June 29, 1979, by order to show cause, the Appellate Division stayed the forfeiture of bail, the execution of sentence, and returned it to the County Court for hearing on July 6, 1979. On that date, the Bench warrant was vacated and bail reinstated. The Appellate Division did not vacate the Bench warrant nor did it reinstate the bail provisions imposed by the original order. (CPL 460.50, subd 2, par [d]; Matter of Lefkowitz v Cioffi, 46 AD2d 473.) Accordingly, on July 5, 1979, the date of this incident, the warrant for the arrest of the defendant was outstanding and properly formed the basis of the police action. The People have sustained their burden of verifying the radio bulletin. (People v Lypka, 36 NY2d 210.)
The statement made by the defendant after his arrest and after being given his Miranda warnings was voluntary.
Accordingly, the motion is in all respects denied.